BART H. WILLIAMS (State Bar No. 134009)
bart.williams@mto.com
DANIEL P. COLLINS (State Bar No. 139164)
daniel.collins@mto.com
AMELIA SARGENT (State Bar No. 280243)
amelia.sargent@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

JOSHUA PATASHNIK (State Bar No. 295120)
joshua.patashnik@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Defendants WELLS FARGO & CO.
and WELLS FARGO BANK, N.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CITY OF LOS ANGELES, a municipal corporation,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO & CO., and WELLS FARGO BANK, N.A.,<br><br>　　　　　　Defendants. | Case No. CV-13-09007-ODW(RZx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION OF ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Judge: Hon. Otis D. Wright II<br>Date:　July 14, 2014<br>Time:　1:30 PM<br>Ctrm.: #11, 312 N. Spring St. |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................... 1

II.     ARGUMENT ........................................................................................... 2

    A.      The Court's Order Presents Controlling Questions of Law ................. 2

    B.      The Issues Raised in the Court's Order Present Substantial
        Grounds for a Difference of Opinion ..................................................... 4

        1.      There Are Substantial Grounds for a Difference of
            Opinion As to Whether the Zone-of-Interests Limitation
            Now Applies to a Cause of Action under the Fair
            Housing Act .............................................................................. 6

        2.      There Are Substantial Grounds for a Difference of
            Opinion Regarding Whether a Claim for "Restitution" or
            "Unjust Enrichment" Under California Law Requires a
            Plaintiff to Plead and Prove the Elements of a Separate
            Predicate Cause of Action Under California Law .................... 10

    C.      An Immediate Appeal Would Materially Advance the Ultimate
        Termination of This Litigation ............................................................ 16

III.    CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
  No. C-06-735-MMC, 2006 WL 2850017 (N.D. Cal. Oct. 4, 2006) ................... 16

*Aggio v. Estate of Aggio*,
  No. C-04-4357-PJH, 2006 WL 149006 (N.D. Cal. Jan. 18, 2006) ..................... 17

*APCC Services, Inc. v. AT&T Corp.*,
  297 F. Supp. 2d 101 (D.D.C. 2003) ........................................................ 4

*Asmus v. Pacific Bell*,
  159 F.3d 422 (9th Cir. 1998) .................................................................. 15

*Association of Irritated Residents v. Fred Schakel Dairy*,
  634 F. Supp. 2d 1081 (E.D. Cal. 2008) .............................................. 2, 3

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................. 13

*Brewster v. County of Shasta*,
  112 F. Supp. 2d 1185 (E.D. Cal. 2000) ................................................. 15

*Bryan v. United Parcel Service, Inc.*,
  307 F. Supp. 2d 1108 (N.D. Cal. 2004) ................................................. 15

*Cleveland v. Piper Aircraft Corp.*,
  985 F.2d 1438 (10th Cir. 1993) ............................................................... 5

*Couch v. Telescope, Inc.*,
  611 F.3d 629 (9th Cir. 2010) ............................................................. 4, 5

*DT Apartment Grp., LP v. CWCapital, LLC*,
  No. 3:12-CV-437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012) ................... 8

*Equal Rights Center v. Equity Residential*,
  798 F. Supp. 2d 707 (D. Md. 2011) ........................................................ 9

*Farsian v. Pfizer, Inc.*,
  52 F.3d 932 (11th Cir. 1995) ................................................................. 15

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ................................................. 13

*Garrison v. Whole Foods Market Grp., Inc.*,
  No. 13-cv-5222-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ................... 13

*Giglio v. Farrell Lines, Inc.*,
  424 F. Supp. 927 (S.D.N.Y. 1977) .................................................... 6, 9

*Gladstone, Realtors v. Village of Bellwood*,
  441 U.S. 91 (1977) ........................................................................... 6, 7

*Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.*,
  550 U.S. 45 (2007) .............................................................................. 3

*Hart v. Boeing Co.*,
  09-cv-397-REB-MEH, 2010 WL 2635449 (D. Colo. June 28, 2010) ............. 5, 9

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ................................................................ 6

*Housing Opportunities Project for Excellence, Inc.*
   *v. Wedgewood Condominium Ass'n*,
   No. 12-60172-Civ., 2012 WL 4193969 (S.D. Fla. Sept. 19, 2012) ................ 8, 9

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982) ................................................ 2, 3

*In re DirecTV Early Cancellation Litig.*,
   738 F. Supp. 2d 1062 (C.D. Cal. 2010) ....................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ................................................ 1, 6, 7, 10

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................... 11

*Mattel, Inc. v. Bryant*,
   441 F. Supp. 2d 1081 (C.D. Cal. 2005) ....................................... 16

*Mattel, Inc. v. MGA Entm't, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................................ 13

*Medalie v. FSC Sec. Corp.*,
   87 F. Supp. 2d 1295 (S.D. Fla. 2000) .................................... 5, 9, 15

*Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*,
   No. C03-694P, 2003 WL 25511850 (W.D. Wash. Dec. 16, 2003) .................... 3

*Nasser v. City of Homewood*,
   671 F.2d 432 (11th Cir. 1982) ............................................... 7, 8

*Ohno v. Yasuma*,
   723 F.3d 984 (9th Cir. 2013) ................................................ 14

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) .............................................. 16

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) .............................................passim

*Republic of Colombia v. Diageo N. Am. Inc.*,
   619 F. Supp. 2d 7 (E.D.N.Y. 2007) ........................................... 17

*Reynolds v. Philip Morris USA, Inc.*,
   332 Fed. Appx. 397 (9th Cir. 2009) .......................................... 10

*Robinson v. HSBC Bank USA*,
   732 F. Supp. 2d 976 (N.D. Cal. 2010) ........................................ 12

*Smith v. eBay Corp.*,
   No. C-10-3825-JSW, 2012 WL 27718 (N.D. Cal. Jan. 5, 2012) ................... 12

*Thompson v. North American Stainless, L.P.*,
   131 S. Ct. 863 (2011) ...................................................passim

- iii -

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Trafficante v. Metropolitan Life Ins. Co.*,
    409 U.S. 205 (1972) ................................................................ 6, 7, 9

*United States ex rel. Huangyan Import & Export Corp.*
    *v. Nature's Farm Prods., Inc.*,
    370 F. Supp. 2d 993 (N.D. Cal. 2005) ................................................. 3

*Walker v. USAA Cas. Ins. Co.*,
    474 F. Supp. 2d 1168 (E.D. Cal. 2007 ............................................. 11

*Walker v. Geico General*,
    558 F.3d 1025 (9th Cir. 2009) ....................................................... 11

*Waters v. Heublein, Inc.*,
    547 F.2d 466 (9th Cir. 1976) ......................................................... 7


## STATE CASES

*Asmus v. Pacific Bell*,
    23 Cal. 4th 1 (2000) .................................................................... 11

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ................................................. 10, 11

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ....................................................... 11

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................. 11

*Levine v. Blue Shield of Cal.*,
    189 Cal. App. 4th 1117 (2010) ....................................................... 12

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ................................................... 14, 15

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ......................................................... 11

*Muñoz v. MacMillan*,
    195 Cal. App. 4th 648 (2011) ......................................................... 10

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ................................................. 12, 14


## STATUTES AND RULES

28 U.S.C. § 1292 ...................................................................... *passim*

42 U.S.C. § 3601 ............................................................................. 1

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

### STATUTES AND RULES (CONT'D)

Fed. R. Civ. P. 23(f) .......................................................................... 16

Cal. Rules of Court 8.548 ................................................................... 15

### OTHER AUTHORITIES

55 CAL. JUR. 3D, *Restitution* (2014) .................................................. 13

16 CHARLES A. WRIGHT, ARTHUR R. MILLER, ET AL.,
FEDERAL PRACTICE AND PROCEDURE: JURISDICTION (3d ed. 2014) ............... 2, 16

M. TIGAR & J. TIGAR, FEDERAL APPEALS JURISDICTION AND PRACTICE
(3d ed. 2013) .......................................................................... 4

DEFENDANTS' MEMO. I/S/O MOTION FOR CERTIFICATION OF ORDER UNDER 28 U.S.C. § 1292(b)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   <u>INTRODUCTION</u>

Defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Defendants") respectfully request that this Court certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), its May 28, 2014 "Order Denying Defendants' Motion to Dismiss and Denying Defendants' Motion to Strike" (the "Order").[1]

The threshold viability of the claims asserted by the City of Los Angeles ("City") under the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA" or "Act"), and under state law depends on the ultimate resolution of at least two purely legal questions, both of which meet the criteria for certification under § 1292(b):

    1)    Whether the "zone-of-interests" limitation described in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), and in *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011), applies to a cause of action under the Fair Housing Act, so as to limit, beyond the limitations imposed by the standing requirements of Article III, the persons "aggrieved" who may sue under that Act.

    2)    Whether a claim for "restitution" or "unjust enrichment" under California law requires a plaintiff to plead and prove the elements of a separate predicate cause of action under California law—an issue that this Court observed was one as to which the "courts in California are actually divided."

If the Court of Appeals were to answer both of these questions in Defendants' favor, that could require dismissal of the City's lawsuit in its entirety. Alternatively, a reversal by the Ninth Circuit on one of these two questions could significantly limit the issues before this Court in this litigation, avoiding the unnecessary expenditure of judicial and party resources. Under these circumstances, courts

---

[1] Defendants do not at this time seek a stay of the litigation pending an interlocutory appeal. *See* 28 U.S.C. § 1292(b) ("application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order").

1    regularly find that an interlocutory appeal is warranted.  *See*, *e.g.*, *Reese v. BP*
2    *Exploration (Alaska) Inc.*, 643 F.3d 681, 688 & n.5 (9th Cir. 2011) (interlocutory
3    appeal warranted, even as to subset of issues, where it may avoid "unnecessary,
4    protracted litigation and a considerable waste of judicial resources").

5    **II.    ARGUMENT**

6    Under 28 U.S.C. § 1292(b), certification of an order for interlocutory
7    appellate review is warranted where (1) the decision involves a controlling question
8    of law, (2) on which there is substantial ground for a difference of opinion, and
9    (3) immediate appeal from the order may materially advance the ultimate
10   termination of the litigation.  The Order readily satisfies each of these three
11   requirements.

12   **A.    The Court's Order Presents Controlling Questions of Law**

13   Under long-standing Ninth Circuit law, "all that must be shown in order for a
14   question to be 'controlling' is that resolution of the issue on appeal could *materially*
15   *affect* the outcome of litigation in the district court."  *In re Cement Antitrust Litig.*,
16   673 F.2d 1020, 1026 (9th Cir. 1982) (emphasis added).  Accordingly, it is not
17   necessary to show that resolution of the issue would "terminate the litigation"; it is
18   sufficient that the appellate resolution of the issue could have any material impact
19   on the eventual outcome of the litigation.  *Id.* at 1026-27; *see also* 16 CHARLES A.
20   WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE:
21   JURISDICTION § 3930 (3d ed. 2014) (at a minimum, "a question is 'controlling' if its
22   incorrect disposition would require reversal of a final judgment, either for further
23   proceedings or for a dismissal that might have been ordered without the ensuing
24   district-court proceedings"); *cf. Association of Irritated Residents v. Fred Schakel*
25   *Dairy*, 634 F. Supp. 2d 1081, 1088 (E.D. Cal. 2008) (noting that, other than *In re*
26   *Cement Antitrust Litig.*, "there is minimal guidance from the Ninth Circuit as to
27   what constitutes a controlling question of law").

28   The two legal issues presented in the Order and summarized above are

- 2 -

"controlling question[s] of law" under this standard.  28 U.S.C. § 1292(b).  A reversal on *both* issues could result in the dismissal of both of the City's claims and the resulting termination of the litigation.  Issues that could terminate the litigation entirely are obviously "controlling."  *In re Cement Antitrust Litig*., 673 F.2d at 1026 (to establish that questions of law are controlling, it is sufficient, but not necessary, to show that "reversal of the district court's order [could] terminate the litigation"); *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*, No. C03-694P, 2003 WL 25511850 at *1, 8 (W.D. Wash. Dec. 16, 2003) (order resolving pleadings motions as to *both* federal statutory claims and state common law claims involved "controlling" questions of law).[2]

Moreover, either issue alone is "controlling" because an appellate reversal on either issue "could materially affect the outcome of [the] litigation" by entirely eliminating or significantly narrowing one of the City's two causes of action, thereby altering what the City must show to establish liability or potentially affecting the scope of any potential recovery.  *In re Cement Antitrust Litig.*, 673 F.2d at 1026.  Numerous courts have endorsed the common-sense conclusion that an issue of law that could result in the elimination of even one of the plaintiff's main causes of action could have a material impact on the outcome of the litigation and is therefore "controlling" within the meaning of § 1292(b).  *See*, *e.g.*, *Reese*, 643 F.3d at 688 (upholding § 1292(b) jurisdiction over interlocutory appeal that involved only a subset of the claims in the case); *Association of Irritated Residents*, 634 F. Supp. 2d at 1089 (issue was "controlling" under § 1292(b) because an appellate reversal could materially affect the outcome of the litigation by resulting in dismissal of one of plaintiff's three claims); *United States ex rel. Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1005 (N.D. Cal. 2005) (in suit involving both False Claims Act ("FCA") claims and common-law claims, the FCA

---

[2] Notably, the Ninth Circuit's decision in the resulting § 1292(b) appeal in *Metrophones* was ultimately reviewed by the U.S. Supreme Court.  *See Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.*, 550 U.S. 45 (2007).

1   issues were controlling under §1292(b) because, "[d]epending on how the three
2   issues are resolved, the United States might have two FCA claims, one FCA claim,
3   no claim at all or might be in the wrong court altogether"); *see also* M. TIGAR & J.
4   TIGAR, FEDERAL APPEALS JURISDICTION AND PRACTICE § 2:9 (3d ed. 2013) (question
5   may be "controlling" if, *inter alia*, it "involve[s] an entire theory of liability").

### B.    The Issues Raised in the Court's Order Present Substantial Grounds for a Difference of Opinion

8       The second element required for certification under § 1292(b) is that the
9   controlling questions of law must be ones "as to which there is substantial ground
10  for difference of opinion." 28 U.S.C. § 1292(b).  As the Ninth Circuit has
11  explained, this element is satisfied if the issues are ones "'over which reasonable
12  judges might differ.'"  *Reese*, 643 F.3d at 688; *see also id.* (question is whether
13  "fair-minded jurists might reach contradictory conclusions").  There are several
14  alternative ways in which it can be shown that reasonable judges could disagree
15  concerning an issue to be certified.

16      One obvious way is to show that judges actually *have* disagreed over the
17  question.  Thus, a substantial ground for difference of opinion exists where, for
18  example, "'the circuits are in dispute on the question and the court of appeals of the
19  circuit has not spoken on the point ....'"  *Couch v. Telescope, Inc.*, 611 F.3d 629,
20  633 (9th Cir. 2010); *APCC Services, Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 107
21  (D.D.C. 2003) (standard is met where "a court's challenged decision conflicts with
22  decisions of several other courts").

23      The Ninth Circuit has cautioned, however, that it is not necessary to show an
24  actual division of authority on the question: "A substantial ground for difference of
25  opinion exists where reasonable jurists *might* disagree on an issue's resolution, not
26  merely where they *have* already disagreed."  *Reese*, 643 F.3d at 688 (emphasis
27  added).  Thus, for example, a substantial ground for difference of opinion also exists

28

1  when "novel legal issues are presented, on which fair-minded jurists might reach

2  contradictory conclusions." *Id.*; *see also Couch*, 611 F.3d at 633 (same).

3      Moreover, even when there already is circuit precedent that addresses a

4  question, the existence of that precedent does not always foreclose a finding that,

5  even in that circuit, the issue is one that presents a "substantial ground for difference

6  of opinion." 28 U.S.C. § 1292(b). For example, when reasonable jurists could

7  differ as to whether *subsequent* authority has undermined the otherwise applicable

8  appellate precedent concerning a question, then that question (and the continued

9  validity of the appellate precedent on that point) presents an issue as to which

10 "'reasonable judges might differ.'" *Reese*, 643 F.3d at 688. Put another way, the

11 question of the continued validity of the prior precedent in light of subsequent

12 authorities may itself present a "novel legal issue[], … on which fair-minded jurists

13 might reach contradictory conclusions," *id.*, or might even present an issue as to

14 which a division of authority has already emerged.

15      Thus for example, after denying a motion to dismiss based on the Tenth

16 Circuit's "controlling" decision in *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438

17 (10th Cir. 1993), the district court in *Hart v. Boeing Co.*, 09-cv-397-REB-MEH,

18 2010 WL 2635449 (D. Colo. June 28, 2010), certified its order for interlocutory

19 review under § 1292(b), finding that the continued validity of *Cleveland* in light of

20 subsequent precedent was debatable, and that the underlying issue resolved in

21 *Cleveland* therefore presented a "substantial ground for difference of opinion":

22 "Although *Cleveland* remains controlling, as I previously found, it clearly is not

23 settled in light of both the subsequent Supreme Court precedents which arguably

24 undermine it and the split of authority that has developed between federal courts as

25 to this issue." *Id.* at *2. *See also Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295,

26 1304 (S.D. Fla. 2000) (following binding Eleventh Circuit precedent on a question

27 of Florida law in partially granting motion to dismiss, but certifying issue for

28 interlocutory review because subsequent Florida appellate authority cast doubt on

- 5 -

1  continued validity of Eleventh Circuit's precedent); *Giglio v. Farrell Lines, Inc.*,

2  424 F. Supp. 927, 930-31 (S.D.N.Y. 1977) (denying motion to dismiss on the

3  ground that subsequent developments had vitiated otherwise controlling Second

4  Circuit precedent, but certifying decision for interlocutory review).

5  Under these standards, both of the certified questions set forth above are ones

6  "as to which there is substantial ground for difference of opinion."  28 U.S.C.

7  § 1292(b).

8  **1.  There Are Substantial Grounds for a Difference of Opinion As to Whether the Zone-of-Interests Limitation Now Applies to a Cause of Action under the Fair Housing Act**

10  In its Order, this Court considered and rejected Defendants' argument that the

11  Supreme Court's recent decisions in *Thompson* and *Lexmark* vitiated the prior

12  appellate authority—such as *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982);

13  *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979); and *Trafficante v.*

14  *Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972)—which had held that "Congress

15  intended standing under the FHA to be as broad as Article III standing."  (Order at

16  10.)  There is a division of authority among the district courts as to whether

17  *Thompson* vitiates *Trafficante*, *Gladstone*, and *Havens Realty* and now requires

18  application of the "zone-of-interests" limitation on standing in the context of the

19  FHA.  Moreover, this Court was the first to consider (after ordering supplemental

20  briefing) the novel and important question whether *Lexmark* requires application of

21  that same limitation to *all* statutes, including the FHA.  These considerations

22  confirm that there is "substantial ground for difference of opinion" as to the

23  application of the zone-of-interests limitation to the FHA.

24  In addressing Defendants' contention that *Thompson* and *Lexmark* vitiated the

25  maximally expansive standing applied in *Trafficante* and its progeny, this Court

26  recognized that the FHA (Title VIII) uses the phrase "aggrieved person" in defining

27  who may sue under that statute, and that "[i]n *Thompson*, the Supreme Court

28  interpreted the same 'aggrieved person' language in the context of an employment-

- 6 -

discrimination suit under Title VII to limit statutory standing by only allowing suits to be brought by employees."  (Order at 11.)  Defendants had argued that, because *Trafficante*'s seminal holding that FHA standing extends to the limits of Article III was itself based on precedent construing "aggrieved" in Title VII, and because the Ninth Circuit had held in *Waters v. Heublein, Inc.*, 547 F.2d 466, 470 (9th Cir. 1976), that the term "aggrieved" should be given the same meaning in both statutes, *Thompson*'s explicit rejection of *Trafficante*'s standing rule in the context of Title VII necessarily extended to the FHA.  (Defts.' Memo. (Dkt. 21-1) at 14-15; Defts.' Reply (Dkt. 31) at 3; Defts.' Supp. Memo. (Dkt. 34) at 3.)  Defendants also argued that *Lexmark*'s holding that the zone-of-interests limitation is a "'requirement of general application'" that "applies to *all* statutorily created causes of action," 134 S. Ct. at 1388 (emphasis added), confirmed that that limitation applied to all statutes, including the FHA.  (Defts.' Reply (Dkt. 31) at 3-4; Defts.' Supp. Memo. (Dkt. 34) at 2-3.)  In rejecting these arguments, this Court noted that *Thompson* had "explicitly stated" that it "'is Title VII rather than Title VIII that is before us here,'" and that *Thompson* noted that the actual holding in *Gladstone*—upholding the village's standing in that case—"remained consistent with its analysis of the 'zone of interests' limitation."  (Order at 11, quoting *Thompson*, 131 S. Ct. at 869.)

There is a split of authority as to whether the reasoning in *Thompson* extends equally to the FHA as it does to Title VII.  In contrast to this Court's decision, at least two district courts have adopted arguments similar to Defendants' and held that *Thompson* requires application of the zone-of-interests limitation in suits brought under the FHA.[3]

---

[3] Moreover, even before *Thompson*, the Eleventh Circuit had held that *Trafficante* and *Gladstone* did not eliminate the zone-of-interests limitation on standing in the context of the FHA.  *See Nasser v. City of Homewood,* 671 F.2d 432, 437 (11th Cir. 1982) ("The impact of *Gladstone*, according to the plaintiffs, is that Congress intended to remove all prudential limitations from standing under the Fair Housing Act so that any party injured in some manner could sue to enforce the rights directly protected by the Act.  [¶]  In our view, the decision in *Gladstone* may not be taken so far.").

- 7 -

1    For example, in *DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-

2    437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012), the court concluded that

3    "[b]ecause the FHA allows suit by an 'aggrieved person,' and given the Court's

4    reasoning in *Thompson*, this court concludes that it must apply the zone of interests

5    test when addressing whether FHA plaintiffs have standing." *Id*. at *15 (citation

6    omitted). Applying that limitation, the court held that the plaintiffs' claims fell

7    outside the FHA's zone of interests because they were not an effort "to attain the

8    benefits of integrated living," but rather sought to "us[e] an alleged discriminatory

9    impact on minority tenants as the basis for complaining about defendants' business

10   practices." *Id.* at *16. This articulation of the FHA's more narrow zone of interests

11   is comparable to that drawn by the Eleventh Circuit in *Nasser*. *See Nasser*, 671 F.2d

12   at 437 (under zone-of-interests limitation, FHA standing does not extend "to

13   plaintiffs who show no more than an economic interest which is not somehow

14   affected by a racial interest").

15   In a second case, *Housing Opportunities Project for Excellence, Inc. v.*

16   *Wedgewood Condominium Ass'n*, No. 12-60172-Civ., 2012 WL 4193969 (S.D. Fla.

17   Sept. 19, 2012) ("*HOPE*"), the court held that, in light of *Thompson*'s holding that

18   *Trafficante*'s reasoning was "too expansive and that 'the term "aggrieved" must be

19   construed more narrowly than the outer boundaries of Article III,'" FHA standing

20   no longer extends to the limits of Article III. *Id.* at *4 (quoting *Thompson*, 131

21   S. Ct. at 869). Applying *Thompson*, the court held that standing under the FHA

22   extends both to "those who were the object of discriminatory practices" and those

23   who suffered "loss of the benefit of living in an integrated community" as a result of

24   the defendant's alleged discriminatory practice. *Id.* This articulation of the FHA's

25   zone of interests is comparable to that urged by Defendants in this case. (Defts.'

26   Supp. Memo. (Dkt. 34) at 4-5.) On the facts of the case, the district court in *HOPE*

27   held that the plaintiffs *did* fall within this more narrow concept of standing that

28   resulted from applying *Thompson* to the FHA. 2012 WL 4193969 at *5. This was

- 8 -

so, the court reasoned, because the plaintiffs, who invoked the FHA's prohibition of discrimination based on familial status, had alleged that they "would like to enjoy the benefits of socialization with families with children" and "ha[d] been harmed by the denial of the opportunity to live in a neighborhood free of discrimination," *id.*, in contrast to the purely economic injuries alleged in *DT Apartment Group*.

By contrast, at least two other district court opinions have agreed with this Court's conclusion that *Thompson*'s rejection of *Trafficante* in construing the term "aggrieved" person in Title VII does not extend to the FHA and does not impose a zone-of-interests limitation to the FHA. *Equal Rights Center v. Equity Residential*, 798 F. Supp. 2d 707, 718 n.4 (D. Md. 2011); *see also City of Los Angeles v. Bank of America Corp.*, No. 13-cv-9046-PA-AGR, Docket No. 50, at 9 (June 12, 2014) (order denying motion to dismiss).

As explained above, this split of authority among the courts as to whether the reasoning in *Thompson* vitiates *Trafficante* and its progeny, and requires application of the zone-of-interests test to the FHA, demonstrates that there is "substantial ground for difference of opinion" on this important question. *See Hart*, 2010 WL 2635449 at *2 (certification under § 1292(b) was warranted where a "split of authority … has developed between federal courts" as to whether recent Supreme Court authority vitiated prior precedent); *Medalie*, 87 F. Supp. 2d at 1304 (certifying state-law issue under § 1292(b) where subsequent Florida appellate authority cast doubt on continued validity of Eleventh Circuit's precedent construing Florida law); *Giglio*, 424 F. Supp. at 930-31 (certifying, under § 1292(b), court's ruling that subsequent developments *had* vitiated otherwise controlling Second Circuit precedent). The Ninth Circuit has yet to address the impact of *Thompson* on its prior FHA case law, and § 1292(b)'s requirement of a "substantial ground for difference of opinion" is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions"—especially when, as here, courts "already have disagreed" on those issues. *Reese*, 643 F.3d at 688.

- 9 -

1     The Supreme Court's recent decision in *Lexmark* further underscores that

2 there is a substantial ground for difference of opinion as to whether the zone-of-

3 interests limitation applies to the FHA. *Lexmark* held that the zone-of-interests

4 limitation is a "'requirement of general application'" that "applies to all statutorily

5 created causes of action" and that this "limitation *always* applies and is never

6 negated." 134 S. Ct. at 1388. *Lexmark*'s adoption of this bright-line rule

7 concerning the application of the zone-of-interests limitation further underscores

8 that there are "substantial ground[s]" for questioning the continued validity of prior

9 case law holding that the zone-of-interests limitation does not apply to the FHA.

10     **2.**   **<u>There Are Substantial Grounds for a Difference of Opinion Regarding Whether a Claim for "Restitution" or "Unjust Enrichment" Under California Law Requires a Plaintiff to Plead and Prove the Elements of a Separate Predicate Cause of Action Under California Law</u>**

13     There is also substantial ground for difference of opinion as to whether a

14 plaintiff may assert a freestanding cause of action for "restitution" or "unjust

15 enrichment" under California law, or whether instead (as Defendants have

16 contended) the plaintiff must plead and prove the elements of a *separate* predicate

17 cause of action under California law for which restitution or unjust enrichment

18 would be a *remedy*. As this Court concluded in its Order, "courts in California are

19 actually divided" on this question. (Order at 17.) Indeed, this long-standing split of

20 authority has been recognized in a leading treatise as well as in innumerable cases.

21 *See infra* at 12-14. Because there is substantial ground for difference of opinion as

22 to this issue of state law, certification is warranted as to this issue as well. *See*, *e.g.*,

23 *Reynolds v. Philip Morris USA, Inc.*, 332 Fed. Appx. 397, 398 (9th Cir. 2009)

24 (§1292(b) appeal certified to decide issue of California law).

25     In moving to dismiss the City's restitution claim, Defendants relied upon

26 several decisions of the California Courts of Appeal that have held in recent years

27 that "[t]here is no freestanding cause of action for 'restitution' in California."

28 *Muñoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011); *accord Durell v. Sharp*

- 10 -

*Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases).  Under this line of cases, the fact that restitution is a remedy, and not a freestanding cause of action, means that the plaintiff must plead some *other* cause of action under California law to which the remedy of restitution can then attach.  Because the plaintiff must plead and prove the elements of that independent cause of action, it cannot state a claim simply by pleading only the *additional* elements of the remedy of restitution (which elements are that the defendant obtained a benefit from the plaintiff and that it would be unjust for the defendant to retain it).  As one district court explained, in distinguishing contrary cases that have allowed freestanding claims for restitution:

> In each case cited the courts were faced with plaintiffs who were claiming unjust enrichment *based on rights arising out of other law. See*, *e.g.*, *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 91 Cal.Rptr.2d 881 (2000) (unjust enrichment claim based upon wrongful dishonor of a credit letter); *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F.Supp.2d 1044, 1075 (E.D.Cal. 2003) (unjust enrichment claim based upon an alleged trust and contractual rights).  Plaintiff has not alleged any such theory here and cannot seek restitution on the basis of unjust enrichment alone without any other legal basis because unjust enrichment is not a cause of action in and of itself.

*Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) (emphasis added), *aff'd on other grounds*, 558 F.3d 1025 (9th Cir. 2009)[4]; *see also*, *e.g.*, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) (because there

---

[4] The Ninth Circuit did not address whether restitution was a cause of action but instead held that, in any event, plaintiff failed to allege the elements "for the equitable remedy of restitution." 558 F.3d at 1027.  The Ninth Circuit's decision in *Walker* was rejected, on a different point of state law (the requirements of standing under the Unfair Competition Law after Proposition 64), in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 335 (2011).

was no separate "actionable wrong, there is no basis for the relief" of restitution); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) ("[P]laintiffs fail to explain how 'restitution' is a cause of action, as opposed to a form of relief that attaches to a cause of action…. There is no cause of action for restitution, but there are various causes of action that give rise to restitution as a remedy."); *Smith v. eBay Corp.*, No. C-10-3825-JSW, 2012 WL 27718 at *9 & n.8 (N.D. Cal. Jan. 5, 2012) (explicitly rejecting conflicting cases allowing claims for unjust enrichment, concluding that "although Plaintiffs may be entitled to recovery for unjust enrichment *under other theories of liability*, a claim for unjust enrichment does not constitute a stand-alone cause of action") (emphasis added).

However, even while adopting this view that restitution is a remedy and not a freestanding cause of action, one relatively recent Court of Appeal decision acknowledged that "some California courts *have* suggested the existence of a separate cause of action for unjust enrichment." *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (emphasis added) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008)). *Levine* rejected such case law, concluding that it was contrary to more "recent[ ]" authority on the issue, and that a freestanding "unjust enrichment claim does not properly state a cause of action" under California law. *Id.* *Levine* thus rejected the "unjust enrichment" claim in that case, holding that there was no such separate claim and that the failure of the plaintiffs' *other* claims "for fraudulent concealment, negligent misrepresentation, and unfair competition" meant that they had failed to plead "any basis on which they would be entitled to restitution pursuant to a theory of unjust enrichment." *Id.* In contrast to *Levine*, which required a *predicate cause of action* to support restitution, *Peterson* listed the elements of an "unjust enrichment" claim by setting forth only those elements that must be shown to establish the *remedy* of restitution: "The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" 164 Cal. App. 4th at 1593.

- 12 -

This Court agreed with the City that, in light of such conflicting case law, "courts in California are actually divided as to whether a claim labeled as 'restitution' or 'unjust enrichment' should proceed."  (Order at 17; *see also* City's Opp. to Motion to Dismiss (Dkt. 29) at 26.)  A leading treatise on California law has likewise recognized the difference of opinion on this point in the decisions of the California Courts of Appeal.  *See* 55 CAL. JUR. 3D, *Restitution* § 2 (2014) (noting division of authority and that while it is generally "said that there is no separate cause of action in this state for unjust enrichment" and that "there is no freestanding cause of action for restitution," "some courts in this state have suggested the existence of a separate cause of action for unjust enrichment").  A long—and growing—line of federal cases has also repeatedly acknowledged this same split in authority, both among the California state courts and among the federal courts construing California law.  *See*, *e.g.*, *Garrison v. Whole Foods Market Grp., Inc.*, No. 13-cv-5222-VC, 2014 WL 2451290 at *6 (N.D. Cal. June 2, 2014) ("Courts in this district disagree about whether a plaintiff may allege a separate cause of action for unjust enrichment."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1166 (C.D. Cal. 2012) ("Although state and federal courts are somewhat inconsistent in their characterization of unjust enrichment under California law, we agree with Defendants that the majority of state and federal district courts in California do not recognize unjust enrichment as a freestanding claim."); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1014 (C.D. Cal. 2011) ("California courts appear to be split on whether a stand alone cause of action for unjust enrichment is anything more than "a general principle, underlying various legal doctrines and remedies.""); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) ("There is some disagreement among California courts about whether unjust enrichment is an independent claim."); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007) ("California courts 'appear to be split on

1  whether unjust enrichment can be an independent claim or merely an equitable

2  remedy.'"").

3        This Court's Order concluded that the split in authority could be side-stepped

4  in this case by addressing whether "the plaintiff has properly pleaded a claim for

5  quasi-contract." (Order at 17.) However, the Court's Order equates the elements of

6  a claim for quasi-contract with the elements of the remedy of restitution (Order at

7  17-18), and in doing so effectively relieved the City of its burden to plead in the

8  complaint the underlying elements of a predicate cause of action in quasi-contract.

9  To establish a claim in quasi-contract, the plaintiff must show either that the parties

10  had an "an *express* contract, but it was procured by fraud or is unenforceable or

11  ineffective for some reason" or that the defendant obtained a benefit from the

12  plaintiff either "by *fraud, duress, conversion, or similar conduct*," in which case

13  "the law will imply a contract (or rather, a quasi-contract)." *McBride v. Boughton*,

14  123 Cal. App. 4th 379, 388 (2004) (emphasis added). Where, as here, there is no

15  claim of an "express contract" between the parties, "the only possible premise of [a]

16  cause of action for unjust enrichment" is "a quasi-contract or assumpsit theory *based*

17  *on [the defendant's] tortious conduct*." *Id*. (emphasis added); *see also Ohno v.*

18  *Yasuma*, 723 F.3d 984, 1006 n.25 (9th Cir. 2013) (noting that the California

19  Supreme Court had "recogniz[ed] a cause of action for unjust enrichment upon a

20  showing that the defendant received benefit through another's *known mistake, fraud,*

21  *coercion or other tortious conduct*") (emphasis added). Here, however, the City has

22  failed to plead and prove that Defendants committed any tortious conduct under

23  California law. The Court's Order does not find that the City had pleaded the

24  elements of any tort under California law by the Defendants against the City, but

25  instead holds that a claim has been stated based solely on the City's pleading of the

26  elements of the *remedy* of restitution. (Order at 18 (addressing the elements of

27  receipt of a benefit and that it would be unjust to retain the benefit).)

28        Like the court in *Peterson*, the only elements of a restitution claim that the

- 14 -

1   Court's Order required the City to plead and prove were that the defendant
2   "'receive[d] a benefit at another's expense'" and, "'as between the two individuals,
3   it is *unjust* for the person to retain it.'"  (Order at 18, quoting *McBride*, 123 Cal.
4   App. 4th at 389.)  The Court's Order thus does not avoid the split of authority
5   concerning whether there is an independent cause of action for restitution, but
6   instead appears to adopt one side in that long-standing debate.  Because substantial
7   ground for difference of opinion exists on this question whether a freestanding claim
8   for restitution can be asserted, certification under § 1292(b) is warranted.

9       Moreover, certification under § 1292(b) would create the possibility that this
10  issue could be certified by the Ninth Circuit to the California Supreme Court for a
11  definitive resolution.  *See* Cal. Rules of Court 8.548 (California Supreme Court will
12  only accept certification from "the United States Supreme Court, a United States
13  Court of Appeals, or the court of last resort of any state, territory, or
14  commonwealth" and not from a district court).  This factor weighs strongly in favor
15  of certification under § 1292(b).  *See*, *e.g.*, *Asmus v. Pacific Bell*, 159 F.3d 422, 424
16  (9th Cir. 1998) (Ninth Circuit authorized § 1292(b) appeal and then certified
17  question to California Supreme Court), *certified question answered*, 23 Cal.4th 1
18  (2000); *Bryan v. United Parcel Service, Inc.*, 307 F. Supp. 2d 1108, 1115 (N.D. Cal.
19  2004) (certifying state law issue for interlocutory appeal to the Ninth Circuit with
20  the suggestion that the question be certified to the California Supreme Court);
21  *Brewster v. County of Shasta*, 112 F. Supp. 2d 1185, 1192 n.18 (E.D. Cal. 2000)
22  (granting permission to seek interlocutory appeal in part because Ninth Circuit
23  could, at its discretion, chose to certify issue to California Supreme Court); *Medalie*,
24  87 F. Supp. 2d at 1304 (invoking similar Florida Supreme Court rule as an
25  additional reason in favor of § 1292(b) certification); *see also Farsian v. Pfizer, Inc.*,
26  52 F.3d 932, 933 (11th Cir. 1995) (*per curiam*) (certifying to Alabama Supreme
27  Court state law question that had been certified for interlocutory appeal by district
28  court under § 1292(b)).

- 15 -

**C.    An Immediate Appeal Would Materially Advance the Ultimate Termination of This Litigation**

The third requirement of § 1292(b)—that certification "may materially advance the ultimate termination of the litigation"—is also satisfied here.

In determining whether an interlocutory appeal may materially advance the ultimate termination of the litigation, courts consider, *inter alia*, the "substantiality of the burdens imposed on the parties by a wrong ruling." 16 CHARLES A. WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3930 (3d ed. 2014). Where, as here, the relevant issues concern the threshold viability of the plaintiff's claims, the potential burdens of an incorrect ruling are significant, and an immediate appeal would materially advance the ultimate termination of the litigation. Indeed, the Ninth Circuit has held that the elimination of even a subset of claims is "sufficient to advance materially the litigation," *Reese*, 643 F.3d at 688, and that conclusion supports certification of the Court's Order here. *See also*, *e.g.*, *Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, No. C-06-735-MMC, 2006 WL 2850017, at *3 (N.D. Cal. Oct. 4, 2006) (court would "greatly benefit" from a court of appeals decision "before embarking on potentially lengthy and costly litigation"); *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1099 (C.D. Cal. 2005) (interlocutory appeal appropriate to "avoid the needless expenditure of judicial resources"); *cf. Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274-75 (11th Cir. 2000) (in the analogous context of appeals under Fed. R. Civ. P. 23(f), "[i]nterlocutory review may be appropriate when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed….");

Receiving the prompt guidance of the Ninth Circuit could potentially bring the case to a prompt conclusion altogether or could limit and focus the case in a manner that would significantly reduce the very substantial burdens that would be imposed on the Court and the parties in litigating this case to a conclusion. The

- 16 -

parties face a protracted discovery process, pre-trial motion practice, a lengthy,
complicated, and undoubtedly expensive trial, and, presumably, post-trial briefing,
all resting on the resolution of threshold issues of law as to which there is reasonable
grounds for difference of opinion.  An interlocutory reversal on one or both of the
controlling questions of law would reduce—likely substantially—the number of
factual and legal issues to be resolved in the litigation.  Dismissal of either the City's
FHA claim or its California common law restitution claim would mean that any
remaining discovery, any motion practice, and the trial could avoid addressing
certain topics necessary to only that claim.  *See*, *e.g.*, *Republic of Colombia v.
Diageo N. Am. Inc.,* 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (holding that immediate
appeal would "materially advance the ultimate termination of the litigation" in a
"'big' case that will require extensive and costly discovery…," and that even if
defendant prevailed on one issue, "the action would be dismissed in whole or in
part, thus eliminating or significantly reducing the costs of discovery"); *Aggio v.
Estate of Aggio*, No. C-04-4357-PJH, 2006 WL 149006, at *2 (N.D. Cal. Jan. 18,
2006) (§ 1292(b) certification appropriate because reversal would avert a
"significant amount of work necessary to litigate the case to its conclusion,
including trial preparation and work on [defendant's] motion for summary
judgment").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should certify its Order for interlocutory
appeal pursuant to 28 U.S.C. § 1292(b).

DATED: June 16, 2014                    MUNGER, TOLLES & OLSON LLP

                                        By:            /s/ *Daniel P. Collins*
                                                       Daniel P. Collins

                                        Attorneys for Defendants
                                        WELLS FARGO & CO. and WELLS
                                        FARGO BANK, N.A.