BART H. WILLIAMS (State Bar No. 134009)
bart.williams@mto.com
DANIEL P. COLLINS (State Bar No. 139164)
daniel.collins@mto.com
AMELIA SARGENT (State Bar No. 280243)
amelia.sargent@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

JOSHUA PATASHNIK (State Bar No. 295120)
joshua.patashnik@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California  94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendants WELLS FARGO & CO.
and WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CITY OF LOS ANGELES, a municipal corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & CO., and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No. CV-13-09007-ODW(RZx)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF JULY 7, 2014 ORDER DENYING DEFENDANTS' MOTION FOR CERTIFICATION OF ORDER FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Judge:  Hon. Otis D. Wright II<br>Date:   August 18, 2014<br>Time:   1:30 PM<br>Ctrm.: #11, 312 N. Spring St. |

1

**TABLE OF CONTENTS**

2
                                                                                    **Page**

3    I.    INTRODUCTION ........................................................................................... 1

4    II.   ARGUMENT ................................................................................................. 3

5          A.    The Recent Decisions in the *Miami* Cases Satisfy the Criteria for
                 Reconsideration Under This Court's Local Rules ................................. 3
6
                 1.    The Issuance of the *Miami* Decisions Is a New "Fact"
7                      That Bears on Whether There Is a "Substantial Ground
                       for Difference of Opinion" ........................................................... 3
8
9                2.    The *Miami* Decisions Constitute a "Material Difference in
                       … Law" and a "Change of Law" That Justify
10                     Reconsidering Whether an Interlocutory Appeal Is
                       Warranted ...................................................................................... 4
11
12         B.    Because a Substantial Ground for Difference of Opinion Now
                 Exists, an Interlocutory Appeal Should Be Certified Under
13               § 1292(b) ............................................................................................ 6

14               1.    The City Overlooks the Critical Fact That the *Miami*
                       Decisions Disagree With the *Los Angeles* Decisions as to
15                     the Import of the Applicable Supreme Court Authority ............ 6
16               2.    The City Is Wrong in Contending That Only Intra-Circuit
17                     Conflicts Count for Purposes of § 1292(b) ................................ 8

18   III.  CONCLUSION ............................................................................................. 12

19

20

21

22

23

24

25

26

27

28

DEFTS.' REPLY MEMO. I/S/O MOTION FOR RECONSIDERATION OF ORDER DENYING INTERLOCUTORY APPEAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Advanced Analogic Tech., Inc. v. Linear Tech. Corp.*,
No. C-06-00735-MMC,
2006 WL 2850017 (N.D. Cal. Oct. 4, 2006) ..................................................... 11

*Bohnert v. Mitchell*,
No. CV-08-2303-PHX-LOA,
2010 WL 3463711 (D. Ariz. Aug. 30, 2010) ...................................................... 5

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) ................................................................................ 6

*City of Los Angeles v. Bank of America Corp.*,
No. 13-CV-9046,
2014 WL 2770083 (C.D. Cal. June 12, 2014) .................................................... 4

*City of Miami v. Bank of America Corp.*,
No. 13-24506-CIV,
2014 WL 3362348 (S.D. Fla. July 9, 2014) ............................................... *passim*

*Couch v. Telescope, Inc.*,
611 F.3d 629 (9th Cir. 2010) ................................................................................ 7

*Gladstone, Realtors v. Village of Bellwood*,
441 U.S. 91 (1979) ................................................................................................ 6

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .............................................................................................. 6

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ........................................................................... 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014) ......................................................................................... 6

*Nasser v. City of Homewood*,
671 F.2d 432 (11th Cir. 1982) .......................................................................... 7, 8

*Paige v. Consumer Programs, Inc.*,
248 F.R.D. 272 (C.D. Cal. 2008) ......................................................................... 5

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................................................................... 3, 5, 6, 9

*Shiguago v. Occidental Petroleum Corp.*,
No. CV-06-4982-ODW(CWx),
slip op. (C.D. Cal. Nov. 23, 2009) .......................................................... 9, 10, 11

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) .............................................................................................. 9

*Thompson v. North American Stainless, LP*,
131 S. Ct. 863 (2011) ..................................................................................... 6, 7, 8

*Trafficante v. Metro. Life. Ins. Co.*,
409 U.S. 205 (1972) ........................................................................................ 7, 8

*United States v. Real Property & Improvements*
    *Located at 2441 Mission Street, S.F., Cal.*,
    No. C-13-2062 SI,
    2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ..................................................... 11

*United States v. Vega*,
    Cr. No. S-07-0165 LKK (GGH),
    2009 WL 1788601 (E.D. Cal. June 23, 2009) ..................................................... 5

*Waters v. Heublein, Inc.*,
    547 F.2d 466 (9th Cir. 1976) ............................................................................. 8

**STATUTES AND RULES**

28 U.S.C. § 1292(b) ...........................................................................................*passim*

Civil Local Rule 7-18 .......................................................................................*passim*

DEFTS.' REPLY MEMO. I/S/O MOTION FOR RECONSIDERATION OF ORDER DENYING INTERLOCUTORY APPEAL

## I.    **INTRODUCTION**

The City's Opposition ("Opp.")[1] to Defendants' Motion for Reconsideration of this Court's Order denying Defendants' motion for certification of an interlocutory appeal misconstrues both the law governing reconsideration and the law governing interlocutory appeals under 28 U.S.C. § 1292(b).

In pressing the remarkable contention that the Court should not even consider the issuance of new, directly conflicting decisions, the City's Opposition loses sight of the fact that Defendants here have moved for reconsideration, not of this Court's order denying their motion to dismiss, but only of this Court's order denying certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Because, under § 1292(b), the inquiry is narrowly focused only on whether *reasonable jurists might disagree* on the relevant question of law, the brand-new emergence of a direct conflict on the underlying question of law—resulting here from the district court's opinion in *City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348 (S.D. Fla. July 9, 2014), dismissing three FHA suits brought on the same theory as the City's suit here—is a highly pertinent development that warrants both reconsideration of the § 1292(b) denial and an order granting certification of an interlocutory appeal under § 1292(b).

The City's contention that Local Rule 7-18 prohibits the Court from even re-examining the § 1292(b) question is contrary both to the language of the rule and to common sense.  The City mistakenly contends that reconsideration is appropriate only where an intervening "change of *controlling* law[ ] *in the Ninth Circuit*" has occurred after this Court issues a decision.  (Opp. 3, emphasis added.)  But the italicized words appear nowhere in Civil Local Rule 7-18, which simply does not impose those additional requirements.  Moreover, requiring new controlling Ninth Circuit authority as a *prerequisite* to reconsideration would make no sense in the

---

[1] Except as otherwise noted, this Reply Memorandum uses the same abbreviations for orders and filings as did Defendants' memorandum of points and authorities in support of its motion for reconsideration.

§ 1292(b) context, which by definition involves situations in which there is "substantial ground for difference of opinion" as to a "controlling question of law." 28 U.S.C. § 1292(b).  The emergence of new, directly conflicting decisions with respect to the proposed certified question is certainly a "new material fact[]," a "change of law," and a "material difference in fact or law"—any one of which is alone sufficient to satisfy Local Rule 7-18.

The City is also wrong in arguing that, notwithstanding the new decisions in the *Miami* cases, there still is no substantial ground for difference of opinion warranting a § 1292(b) appeal.  Under the Ninth Circuit's controlling standards for evaluating the requirements of § 1292(b), the existence of directly conflicting decisions on the *exact same questions of law* in the *exact same fact pattern* plainly establishes that there is a substantial ground for difference of opinion.  The City's arguments that such a square conflict is *still* not enough are unpersuasive.

The City contends (Opp. 4) that Supreme Court precedent dictates the result on the zone-of-interests issue and thus precludes any substantial ground for difference of opinion, but that argument begs the question under § 1292(b).  All of the Supreme Court precedent upon which the City relies is equally binding throughout the United States, and the *Miami* decisions thus starkly confirm that there is a direct conflict, and a "substantial ground for difference of opinion," *as to the meaning and scope of that Supreme Court precedent in this context*.  The City also wrongly claims (Opp. 4-5 & n.4) that there must be a difference of opinion *within the Ninth Circuit* in order to warrant certification, but that is wrong.  The text of § 1292(b) imposes no such requirement, and imposing it would make no sense in this context.  Because the City has consistently argued that it is *Supreme Court* precedent, rather than Ninth Circuit precedent, that precludes a substantial ground for difference of opinion with respect to the underlying zone-of-interests issue, there is no logical reason to limit the "substantial ground" inquiry under § 1292(b) to cases within the Ninth Circuit and to ignore *directly conflicting* out-of-circuit

- 2 -

1    authorities on that precise issue.

2          The City ultimately offers no good reason not to at least *ask* the Ninth Circuit

3    whether it would be willing to hear an interlocutory appeal and avoid the possible

4    expenditure of significant judicial and party resources that this Court identified in its

5    § 1292(b) Order.[2]

6    **II.    ARGUMENT**

7          **A.    The Recent Decisions in the *Miami* Cases Satisfy the Criteria for**
8                  **Reconsideration Under This Court's Local Rules**

9          Civil Local Rule 7-18, which governs motions for reconsideration, provides

10   that "a material difference in fact or law from that presented to the Court," or "the

11   emergence of new material facts or a change of law occurring after" the time of this

12   Court's decision, are each grounds for such a motion.  *See* Civ. L. R. 7-18(a), (b).

13   The *Miami* decisions meet both these standards, and the City's arguments to the

14   contrary are unpersuasive.

15                **1.    The Issuance of the *Miami* Decisions Is a New "Fact" That**
16                        **Bears on Whether There Is a "Substantial Ground for**
                          **Difference of Opinion"**

17         The recent issuance of the *Miami* decisions is a "fact" that materially changes

18   the legal landscape from that which was before the Court when it issued its

19   § 1292(b) Order.  The question before this Court in the context of Defendants'

20   § 1292(b) Motion was not whether its *legal* ruling denying Defendants' Motion to

21   Dismiss was correct.  Rather, the question was whether there is a *substantial ground*

22   *for difference of opinion* as to the correctness of that ruling—a question whose

23   answer, according to the Ninth Circuit, turns on whether "reasonable jurists might

24   disagree on an issue's resolution," including whether "they have already disagreed."

25   *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  The

26   recent issuance of new decisions that directly conflict with this Court's ruling on

27

28   [2] As in their initial § 1292(b) Motion, Defendants have not sought a stay of this action pending the
requested interlocutory appeal.

DEFTS.' REPLY MEMO. I/S/O MOTION FOR RECONSIDERATION OF ORDER DENYING INTERLOCUTORY APPEAL

1   Defendants' motion to dismiss is a factual development that is directly relevant to

2   the question of whether reasonable jurists can disagree on the issue.  As such, it

3   constitutes "a material difference in fact … from that presented to the Court" and

4   "the emergence of new material facts … occurring after" the time of this Court's

5   decision, either of which is sufficient to justify reconsideration.  *See* Civ. L. R. 7-

6   18(a), (b).  The City's Opposition wholly fails to address Defendants' contention

7   that the issuance of the *Miami* decisions is a new "fact" that materially alters the

8   § 1292(b) inquiry and that justifies reconsideration on that basis alone.

9   <u>**2.   The *Miami* Decisions Constitute a "Material Difference in …**</u>
<u>**Law" and a "Change of Law" That Justify Reconsidering**</u>

10   <u>**Whether an Interlocutory Appeal Is Warranted**</u>

11   Moreover, because they are new legal authorities that create a direct conflict

12   on the *same questions of law* in the *same factual setting*, the *Miami* decisions also

13   present a "material difference in … law," and a "change of law," from what was

14   previously presented to this Court.  *See* Civ. L. R. 7-18(a), (b).

15   When this Court decided Defendants' § 1292(b) Motion, both of the federal

16   courts to have considered the zone-of-interests question in the context of municipal

17   FHA claims against banks had reached the same conclusion—that such claims were

18   valid.  The state of the law is now profoundly different: the *Miami* decisions, which

19   explicitly reject Judge Anderson's reasoning and conclusion in denying a motion to

20   dismiss in *City of Los Angeles v. Bank of America Corp.*, No. 13-CV-9046, 2014

21   WL 2770083 (C.D. Cal. June 12, 2014), now create a direct conflict among the

22   decisions of the courts that have addressed the FHA zone-of-interests question in

23   municipal FHA suits.  The *Miami* decisions, which were not issued until after this

24   Court had denied Defendants' § 1292(b) Motion, thus constitute a "material

25   difference in … law" and a "change of law."  *See* Civ. L. R. 7-18(a), (b).

26   The City contends that, to justify reconsideration under Local Rule 7-18, an

27   intervening decision must be "*new controlling authority*" that has "been issued *by*

28   *the Supreme Court or the Ninth Circuit*."  (Opp. 3, emphasis in original, internal

- 4 -

1   quotation marks omitted.)  That is simply not the case: these additional

2   requirements—that a change in law be "controlling" and be issued "by the Supreme

3   Court or the Ninth Circuit"—find no support in either the text of Rule 7-18 or in

4   common sense, and must be rejected.  The rule does not contain the artificially

5   narrow restrictions the City identifies—by its plain terms, it extends to *any* relevant

6   "material difference in … law" or "change of law."  Local rules, like the Federal

7   Rules of Civil Procedure, must be "afford[ed] … their plain meaning," *Paige v.*

8   *Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008), and courts are not

9   to "read extra" provisions into them where the "plain meaning of the rule does not

10  support such additions," *United States v. Vega*, Cr. No. S-07-0165 LKK (GGH),

11  2009 WL 1788601, at *1 (E.D. Cal. June 23, 2009); *see also Bohnert v. Mitchell*,

12  No. CV-08-2303-PHX-LOA, 2010 WL 3463711, at *1 (D. Ariz. Aug. 30, 2010)

13  ("When interpreting a statute or local rule, courts must give words their ordinary or

14  natural meaning" (alterations and internal quotation marks omitted)).

15      The City's reasoning also defies common sense.  The City overlooks the

16  critical point that Defendants seek reconsideration, not of this Court's order denying

17  their motion to dismiss, but only of this Court's order denying certification of an

18  interlocutory appeal pursuant to § 1292(b).  In the § 1292(b) context, it would make

19  no sense to require new "controlling" authority from the Supreme Court or the Ninth

20  Circuit, because the whole premise of a § 1292(b) appeal is that there is a

21  "substantial ground for *difference of opinion*" as to a controlling question of law.  28

22  U.S.C. § 1292(b) (emphasis added).  When the question is whether "reasonable

23  jurists might disagree on an issue's resolution" or whether "they have already

24  disagreed," *Reese*, 643 F.3d at 688, the most pertinent decisions will be from other

25  district courts that have addressed the same issue—and by definition, such decisions

26  are not "controlling."  Accordingly, to insist, as the City does, that reconsideration

27  requires a new "controlling" decision would effectively mean that denial of a

28  § 1292(b) motion could *never* be reconsidered, regardless of the emergence of

- 5 -

1    multiple new conflicting decisions.  Indeed, under the City's illogical view, even if

2    there had been a dozen new conflicting district court decisions (including from other

3    Central District judges), reconsideration of the § 1292(b) Order would still be

4    improper because none of those other district court decisions would be "controlling"

5    and binding on this Court.  That is not the law, and the City can cite no authority in

6    support of its extraordinary argument that new, directly conflicting decisions do not

7    justify reconsideration of a § 1292(b) denial.[3]

8          **B.    Because a Substantial Ground for Difference of Opinion Now
           Exists, an Interlocutory Appeal Should Be Certified Under
9          § 1292(b)**

10         The *Miami* District Court held that, under the now-existing case authority,

11   including *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011), and

12   *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the

13   zone of interests protected by the FHA is substantially narrower than the outer limits

14   of Article III.  2014 WL 3362348, at *3-4.  As Defendants explained in their Motion

15   for Reconsideration ("Mot.") (at 8-9), the recent issuance of these directly

16   conflicting decisions in a materially identical factual context now unequivocally

17   establishes the requisite substantial ground for difference of opinion.  *See Reese*, 643

18   F.3d at 688 (substantial ground for difference of opinion clearly exists where courts

19   "have already disagreed" on the certified question).  The City's contrary arguments

20   lack merit.

21         **1.    The City Overlooks the Critical Fact That the *Miami*
           Decisions Disagree With the *Los Angeles* Decisions as to the
22         Import of the Applicable Supreme Court Authority**

23         The City first claims (Opp. 4) that, regardless of the new *Miami* decisions,

24

---

25   [3] None of the cases the City cites for the proposition that a change in law must be "controlling" to
     justify reconsideration (Opp. 2-3) arose in the context of a motion for reconsideration of the denial
26   of a § 1292(b) motion.  The City is likewise quite wrong in suggesting in passing (Opp. 2-3) that
     the "law of the case" doctrine bars reconsideration of an order absent a change in the controlling
27   law.  The "law of the case" doctrine "does not impinge upon a district court's power to reconsider
     its own interlocutory order[s]."  *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254
28   F.3d 882, 888 (9th Cir. 2001).  "'*All rulings of a trial court are subject to revision at any time
     before the entry of judgment*.'"  *Id.* (emphasis in original, citation omitted).

there still can be no substantial ground for difference of opinion because this Court faithfully followed the controlling decisions from the Supreme Court in *Trafficante v. Metro. Life. Ins. Co.*, 409 U.S. 205 (1972); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979); *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); and *Thompson*, whereas the *Miami* decisions reflect "flawed reasoning" (Opp. 1).  This question-begging argument actually proves Defendants' point.

The Supreme Court decisions in *Trafficante*, *Gladstone*, *Havens Realty*, and *Thompson* are equally binding in the Southern District of Florida as they are in the Central District of California, but the *Miami* District Court rejected Miami's argument that those decisions were controlling in its favor—and in doing so the *Miami* Court expressly rejected the contrary conclusions of Judge Anderson (and, by implication, of this Court).  *See* 2014 WL 3362348, at *3 & n.2.  The *Miami* decisions thus illustrate and confirm that there *is* a substantial ground for difference of opinion as to whether these Supreme Court decisions dictate the conclusion that the novel claims asserted by the City fall within the FHA's zone of interests.[4]

The City also seeks to distinguish the *Miami* decisions on the ground that the *Miami* District Court relied on the Eleventh Circuit's prior decision in *Nasser v. City of Homewood*, 671 F.2d 432 (11th Cir. 1982).  But once again that purported distinction merely restates and confirms the difference of opinion regarding the proper interpretation of the Supreme Court's opinions in *Trafficante*, *Gladstone*, *Havens Realty*, and *Thompson*.  If the *Miami* District Court had agreed with Miami that those Supreme Court cases required a ruling in its favor on the zone-of-interests issue, the *Miami* Court would have been obligated to follow them and to disregard *Nasser*.  But the *Miami* Court instead adopted Defendants' view that, under the existing Supreme Court case law, including *Thompson* and *Lexmark*, the FHA's

---

[4] The City cites (Opp. 4) the Ninth Circuit's statement in *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), that "just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion."  But it is not merely *counsel* that contends that these Supreme Court cases do not support the City here—it is the *Miami* District Court's opinion on materially identical facts that takes that position.

1 | zone of interests is substantially narrower than the outer limits of Article III—and
2 | that *Nasser* remains good law and provides the proper zone-of-interests test.  The
3 | City's argument thus actually serves to illustrate the direct conflict between the
4 | *Miami* decisions and the decisions of this Court and of Judge Anderson regarding
5 | whether *Nasser* is consistent with the currently applicable Supreme Court authority.

6 |     The City's specific arguments concerning the Supreme Court's decision in
7 | *Thompson* only further serve to illustrate the now-existing substantial ground for
8 | difference of opinion.  The City argues that *Nasser* is no longer good law and must
9 | be disregarded because it "was decided before the Supreme Court's recent decision
10 | in *Thompson* explicitly limited itself to Title VII, and this Court followed the
11 | language pertaining to Title VIII FHA cases."  (Opp. 4.)  But the *Miami* Court
12 | *disagreed* with this contention and instead held that *Thompson* is not inconsistent
13 | with *Nasser*.  2014 WL 3362348, at *4 (holding that *Nasser* standard was consistent
14 | with *Thompson* standard).  Regardless of whether the *Miami* District Court was or
15 | was not correct in that conclusion, its decision confirms that there is a substantial
16 | ground for difference of opinion as to whether *Thompson* precludes the stricter FHA
17 | zone-of-interests test applied in *Nasser*.[5]

18
19 |     **2.   The City Is Wrong in Contending That Only Intra-Circuit Conflicts Count for Purposes of § 1292(b)**

20 |     The City is equally wrong in contending that the *Miami* decisions should be
21 | disregarded because they "do[] not create a substantial ground for difference of
22 | opinion in the Ninth Circuit."  (Opp. 4.)

23 |     The City once again improperly seeks to rewrite the relevant standard.  The
24 | text of § 1292(b) makes no mention of a requirement of an intra-circuit conflict, and

25 | [5] Moreover, *Thompson* did not affirmatively *re-endorse* the notion that the FHA's standing
26 | extends to the outer limits of Article III.  Instead, after sharply criticizing *Trafficante*'s analysis as
    | "too expansive" and producing "absurd consequences" if followed, the Court expressly rejected it
27 | in the Title VII context and *reserved* the question whether *Thompson*'s criticisms apply equally to
    | Title VIII.  *Thompson*, 131 S. Ct. at 869.  Notably, on the latter question, the controlling Ninth
28 | Circuit precedent holds that the definition of the term "aggrieved" is the same under Title VII as it
    | is under the FHA.  *Waters v. Heublein, Inc.*, 547 F.2d 466, 469-70 (9th Cir. 1976).

*Reese*—the Ninth Circuit's most detailed analysis of the question—held that an interlocutory appeal is appropriate whenever the "appeal involves an issue over which reasonable judges might differ," even if *no* conflict, whether inside or outside the circuit, yet exists.  643 F.3d at 688.  Indeed, the City cites no Ninth Circuit opinion that adopts or endorses engrafting such a requirement onto § 1292(b), much less in the across-the-board manner the City advocates.

Application of the City's purported rule in this particular context would make no sense and finds no support in precedent.  As explained above, here the relevant difference of opinion is based on the district courts' disagreement about the scope and import of the applicable *Supreme Court* decisions, *see supra* at 6-8, and there is no reason, in *that* context, why only a district court decision from *within* a given circuit would count for purposes of § 1292(b).  In such a circumstance, a decision from any reasonable jurist bound by Supreme Court precedent would count—and reasonable jurists can be found both inside and outside the Ninth Circuit.  The City's rule might conceivably make sense in the context of a debate that was specifically focused on the import of *Ninth Circuit* precedent, but the City has never claimed that Ninth Circuit authority is distinctively the obstacle to Defendants' position.  Rather, the City's views concerning the zone of interests rest entirely on the proper interpretation of Supreme Court cases, which are equally binding across the nation.

This situation is thus akin to that in *Shiguago v. Occidental Petroleum Corp.*, No. CV-06-4982-ODW(CWx), slip op. at 2 (C.D. Cal. Nov. 23, 2009) (Collins Decl. in Support of § 1292(b) Reply, Ex. A) (Dkt. 47-1), where the question concerned whether aiding-and-abetting liability under the Alien Tort Statute was consistent with the Supreme Court's opinion in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).  Although the Ninth Circuit had upheld such liability *before* the decision in *Sosa*, it had not yet addressed whether such liability was consistent with *Sosa*'s standards.  This Court held that such liability was consistent with *Sosa*, but it certified a § 1292(b) appeal in light of a conflict with a *District of Columbia District*

1    *Court* decision.  *Shiguago*, slip op. at 2.  The inter-circuit difference of opinion as to

2    the correct interpretation of Supreme Court case law was sufficient there and is

3    sufficient here.  The City (Opp. 5-6 n.4) seeks to distinguish *Shiguago* on the ground

4    that "here the Supreme Court has spoken multiple times," but that argument is again

5    question-begging.  In *Shiguago*, as here, the question concerned the *reach and*

6    *application* of what the Supreme Court had said in its applicable precedent, and an

7    inter-circuit conflict on that point is equally sufficient to establish a substantial

8    ground for difference of opinion.[6]  The City's effort to distinguish *Shiguago* fails.

9        The City also misconstrues this Court's § 1292(b) Order when it contends that

10   that Order supposedly adopted the City's bright-line rule that an inter-circuit

11   difference of opinion is never sufficient to create a substantial ground for difference

12   of opinion under § 1292(b).  As explained above, the City's proposed bright-line is

13   contrary to the text of § 1292(b), the applicable precedent, and to common sense,

14   and there is no suggestion in the Court's Order that it was endorsing the City's

15   deeply flawed analysis.  Rather, this Court's Order simply stated that the Court was

16   "unpersuaded" that the *particular* authorities that Defendants *then* proffered—which

17   involved very different factual contexts from that presented here—provided a

18   sufficiently strong basis to warrant certification.  (§ 1292(b) Order at 4.)  Now,

19   however, in light of the *Miami* District Court opinions, the conflict of opinion is

20   clear, current, and directly on-point.

21       The City is likewise wrong in citing a handful of district court opinions for the

22   sweeping proposition that "other courts have rejected the argument that decisions

23   from outside the Ninth Circuit can create a substantial ground for disagreement."

24

25   ────────────────────

[6] The City also seeks to distinguish *Leite v. Crane Co.*, 749 F.3d 1117, 1120 n.1 (9th Cir. 2014)
(cited at Mot. 10), on the ground that in that case "there were conflicting district court decisions
26   from within the Ninth Circuit, so a substantial ground for disagreement was not created solely by a
district court decision from outside the Ninth Circuit."  (Opp. 5 n.4.)  But the Ninth Circuit's
27   opinion in *Leite* (which cited a conflict with district court opinions both inside and outside the
Ninth Circuit) did not remotely suggest that the within-circuit district court authorities were more
28   essential to its finding of a substantial ground for difference of opinion than the district court
authorities from outside the circuit.

(Opp. 5.)  None of the opinions the City cites purport to adopt its bright-line rule either, but merely decline to find a sufficiently clear conflict in situations that bear no resemblance to the sharp and well-defined conflict here.  Moreover, the City's selective string-citing overlooks the fact that many other decisions (including this Court's order in *Shiguago*) have not hesitated to certify § 1292(b) appeals based on inter-circuit conflicts.  *See Shiguago*, slip op. at 2-3; *see also*, *e.g.*, *United States v. Real Property and Improvements Located at 2441 Mission Street, S.F., Cal.*, No. C-13-2062 SI, 2014 WL 1350914, at *3 (N.D. Cal. Apr. 4, 2014) (finding substantial ground for difference of opinion and certifying question for interlocutory appeal based on conflict between California district court opinion and New York district court opinion); *Advanced Analogic Tech., Inc. v. Linear Tech. Corp.*, No. C-06-00735 MMC, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) (finding substantial ground for difference of opinion and certifying question for interlocutory appeal based on conflict between district court opinions in New York and Illinois).  There is no support for the City's suggestion (Opp. 6 n.4) that the Ninth Circuit supposedly follows a rule—with no support in the statute—excluding out-of-circuit authorities from any consideration in the § 1292(b) analysis.

Finally, the City once again repeats its plainly incorrect argument that all Defendants have shown is their own "disagreement" with this Court's order.  (Opp. 6.)  The entire premise of Defendants' motion for reconsideration is that it is not merely Defendants who contend that the FHA's zone of interests does not extend to the outer limits of Article III—another federal district court has now reached that conclusion in the *exact same factual context* (indeed, in a suit brought by the same law firm that represents the City here).[7]

---

[7] Moreover, as Defendants have noted, the *Miami* decisions conflict with the *Los Angeles* decisions with respect to two *additional* questions, namely, whether the sort of municipal FHA claims asserted by the City satisfy the requirements of proximate causation and the statute of limitations.  (Mot. 10.)  (The City contends that Defendants did not note that *Miami* had suggested that the limitations problem might warrant leave to amend (Opp. 1 n.2), but the City's contention is simply false.  (*See* Mot. 6, lines 21-22.))  Certification under § 1292(b) would now also be warranted on these alternative grounds as well.

**III.   CONCLUSION**

The Court should grant reconsideration of its July 7, 2014 Order denying Defendants' § 1292(b) Motion and should enter a new and different order certifying its Motion to Dismiss Order for interlocutory appeal under 28 U.S.C. § 1292(b).

DATED: August 4, 2014                    MUNGER, TOLLES & OLSON LLP

                                         By:          /s/ *Daniel P. Collins*
                                                      Daniel P. Collins

                                         Attorneys for Defendants
                                         WELLS FARGO & CO. and WELLS
                                         FARGO BANK, N.A.

- 12 -